IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL PHILLIPS,

                Plaintiff,

v.

MEGA CONCRETE CONSTRUCTION, LLC,
CONNIE NOBLE, ROBERT GALLAGHER,
CLASSIC CUSTOM HOMES OF WAUNAKEE, INC.,
BRYAN SIPPLE, PRECISION CARPENTRY, LLC,
and JEFF HARIU,

                Defendants.

OPINION and ORDER

20-cv-658-jdp

---

This case arises out of an alleged incident of racial harassment against plaintiff Michael Phillips while he was working as a carpenter at a construction site. Defendant Classic Custom Homes of Waunakee, Inc. was the general contractor. Phillips, who is Black, worked for one of Classic's subcontractors, defendant Precision Carpentry, LLC. Another subcontractor, defendant Mega Concrete Construction, LLC, poured concrete at the site.

Phillips alleges that a supervisor for Mega Concrete, defendant Robert Gallagher, yelled at him angrily, repeatedly called him a "nigger" while stepping toward him, and told him that he was "not wanted" on the site and should "go back to where you belong." Defendant Connie Noble, a manager for Mega Concrete, asked Gallagher to apologize, but when he refused (and called Phillips a "nigger" again), she took no other action. Phillips also alleges that Classic and Precision, along with Classic's COO (defendant Jeff Hariu) and Precision's president (defendant Bryan Sipple) retaliated against him after he complained about the incident. Phillips asserts federal claims for harassment and retaliation under 42 U.S.C. § 1981, along with related state-law claims.

Two motions to dismiss are before the court, one filed by defendants Mega Concrete Construction, LLC and Connie Noble, Dkt. 15, and one filed by defendant Robert Gallagher, Dkt. 35. The main arguments in the motions are that Gallagher's conduct was not sufficiently severe or pervasive to be actionable under § 1981, and that the moving defendants cannot be held liable for Gallagher's conduct. The court will deny the motions for reasons explained below.

## ANALYSIS

Phillips contends that Gallagher violated § 1981 by subjecting him to a hostile work environment because of his race, and that Mega Concrete and Noble can be held liable for failing to remediate the problem. The parties' briefs raise three issue that the court must resolve: (1) whether liability under § 1981 for a hostile-work-environment claim is limited to the employer of the victim; (2) whether the conduct Phillips alleges is actionable under § 1981; and (3) whether Mega Concrete and Noble can be held liable for Gallagher's alleged harassment if they didn't act with discriminatory intent.

**A. Does § 1981 require an employment relationship between the plaintiff and the defendant in the context of a hostile-work-environment claim?**

Defendants contend that only a plaintiff's employer can be held liable for a hostile-work-environment claim under § 1981. It's undisputed that Phillips didn't have an employment relationship with Mega Concrete, Noble, or Gallagher, so all three defendants seek dismissal of the § 1981 claim on this ground.

To resolve this question, the court begins with the text of § 1981, which states: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C.

§ 1981(a). The term "make and enforce contracts" is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

The wording of § 1981 is somewhat awkward and cumbersome, but the court of appeals' interpretation is straightforward: the statute prohibits intentional race discrimination in the making or enforcing of a contract. *See Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). Most § 1981 claims involve alleged discrimination in an employment contract, and, in that context, courts have often observed that the elements of a § 1981 claim are "essentially identical" to a claim under Title VII, which prohibits race discrimination in employment.[1] *See, e.g.*, *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 815 n.21 (7th Cir. 2015); *see also Smith v. Bray,* 681 F.3d 888, 899 (7th Cir. 2012) ("In general, the same standards govern intentional discrimination claims under Title VII, § 1981, and § 1983.").

But when it matters, the court of appeals has pointed out that the two statutes are not, in fact, identical. Relevant to this case, Title VII "authorizes suit only against the employer as an entity." *Smith*, 681 F.3d at 895–96. But the text of § 1981 doesn't require an employment relationship, and it permits suits against individuals as well as entities. *Id.* It does require a contractual relationship, but that relationship need not be between the plaintiff and the defendant. *See Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008) (stating that it is "irrelevant" whether the plaintiff and the defendant have a contract under § 1981). Rather, the question is simply whether the defendant interfered with the plaintiff's contract because of the

---

[1] Title VII makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

plaintiff's race. *See id.* ("[T]ortious interference with contract rights violates section 1981 when the motivation for the interference is racial."); *see also Parker v. Scheck Mechanical Corp.*, 772 F.3d 502, 507 (7th Cir. 2014) ("[A] third party may be liable [under § 1981] for interfering with a person's equal opportunity to make and enforce contracts."). Phillips's theory in this case is that defendants interfered with the employment contract he had with Precision by subjecting him to harassment while he was on the job.

Defendants acknowledge that an employment relationship between the plaintiff and the defendant isn't required for a "contract impairment" claim under § 1981, but they say that a "hostile work environment" claim does impose such a requirement. They rely on *Hancick v. Hanna Steel Corp.*, 653 F.3d 532 (7th Cir. 2011), which was a hostile-work-environment case brought under § 1981. The court stated that it "analyze[s] § 1981 discrimination claims in the same manner as claims brought pursuant to Title VII of the Civil Rights Act," and it enumerated the four elements of a Title VII hostile-work-environment claim based on race: "(1) the work environment must have been both subjectively and objectively offensive; (2) race must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability." *Id.* at 544. The court then applied those elements to the plaintiff's claim.

Defendants seize on the fourth element, contending that it limits hostile-work-environment claims under § 1981 to employers. But defendants are reading too much into *Hancick*. For one thing, *Hancick* involved an employee's claim against an employer, so the court had no occasion to consider whether the elements under Title VII needed to be adjusted for § 1981. Again, there is no textual basis in § 1981 for requiring an employment relationship, regardless of the type of claim that the plaintiff is asserting. If the court of appeals were

4

attempting to read in such a requirement, it would be surprising that the court failed to provide any reasoning for a conclusion that is inconsistent with the plain language of the statute.

For another thing, the requirement in Title VII cases that there be a "basis for employer liability" is not a separate requirement that the defendant must be the plaintiff's employer in hostile-work-environment claims. That is a requirement in *every* Title VII claim as a matter of statutory text, *see* 42 U.S.C. § 2000e-2(a); it has nothing to do with the type of claim asserted. The "basis for employer liability" is just another way of saying a "basis for principal liability" for the conduct of an agent. In other words, the question for that element under Title VII is whether it is appropriate under agency principles to impose liability on an entity defendant for harassment committed by a third party, including an employee of the defendant. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 763 (1998) (under Title VII, "agency principles constrain the imposition of vicarious liability" for harassment committed by the entity defendant's employee). The court will consider that issue in Part C of the opinion. Here, the important point is that the court doesn't read *Hancick* as limiting § 1981 hostile-work-environment claims to employers, and defendants identify no other basis for imposing such a requirement. So the lack of an employment relationship between Phillips and these three defendants doesn't require dismissal of the § 1981 claim against them.

**B. Has Phillips alleged conduct that is actionable under § 1981?**

The parties agree that one of the requirements of Phillips's claim is that the alleged harassment must be "severe or pervasive," a concept that was borrowed from Title VII case law. The parties don't cite cases in which the court of appeals explained why that requirement applies in § 1981 hostile-work-environment claims, but it makes sense that it would. In Title VII case law, the "severe or pervasive" requirement is the standard for determining whether

harassment alters a plaintiff's "terms, conditions, or privileges of employment," which is an element of a Title VII claim. *See Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65 (1986). Section 1981 similarly applies to interference with a plaintiff's "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *See Danco, Inc. v. Wal Mart Stores, Inc.*, 178 F.3d 8, 13 (1st Cir. 1999) (noting that the language in § 1981(b) "tracks language of Title VII prohibiting discrimination with respect to 'compensation, terms, conditions, or privileges of employment'").

To support a finding that he was subjected to severe or pervasive harassment, Phillips alleges the following facts in his complaint. Phillips and Gallagher were working on a construction site, Phillips as a carpenter for Precision and Gallagher as a supervisor for Mega Concrete. Dkt. 1, ¶ 21. All but two of the 12 workers on the site were White. *Id.*, ¶ 26. Gallagher began yelling at Precision workers for leaving project materials and tools in what Gallagher believed was Mega Concrete's area. *Id.*, ¶ 22. Gallagher called the Precision workers "idiots," and he "demanded" that they "move the fucking shit." *Id.*

Phillips apologized to Gallagher, but he asked Gallagher to talk "respectfully like adults." *Id.*, ¶ 24. At that point, Gallagher turned his attention to Phillips, yelling at him in front of all the other workers on the site and repeatedly calling him a "nigger." *Id.*, ¶ 25. Gallagher made statements such as, "You ain't nothing but a fuckin nigger," "What the fuck is going on, Nigger?" and "Go back to where you belong, you're not wanted here." *Id.*, ¶ 26.

Gallagher is taller and larger than Phillips. *Id.*, ¶ 30. So when Gallagher "appeared angry" and "stepped towards" Phillips, Phillips felt "physically threatened" and "[f]ear[ed] a physical attack." *Id.*, ¶¶ 29–30.

Gallagher later refused to apologize, stating, "fuck that nigger," and "you people call each other niggers all the time." *Id.*, ¶ 34.

Because Phillips bases his harassment claim on a single incident, the question is a close one under circuit precedent. But the court concludes that Phillips has adequately alleged that Gallagher subjected him to severe harassment on the worksite, even if the harassment didn't last long enough to qualify as pervasive. *Lapka v. Chertoff*, 517 F.3d 974, 983 (7th Cir. 2008) ("[W]e have repeatedly stressed that the phrase 'severe or pervasive' is disjunctive."). The n-word is not just a racial slur; it may be unique in American English in its ability to offend, provoke, and injure. *See Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 477 (7th Cir. 2004) ("Given American history, we recognize that the word . . . can have a highly disturbing impact on the listener."). The speaker's purpose is often to disrespect, intimidate, and even dehumanize the listener. Because the word's history is so intimately connected with violence and denigration, it can be inherently threatening in a way that other epithets are not.

In numerous cases, the court of appeals has recognized that the use of the n-word can create a hostile work environment.[2] "While there is no magic number of slurs that indicate a

---

[2] *See, e.g.*, *Gates v. Bd. of Educ. of the City of Chicago*, 916 F.3d 631, 640–41 (7th Cir. 2019) (reasonable jury could find that supervisor created a hostile work environment by calling plaintiff the n-word twice and threatening to write up his "black ass"); *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 912 (7th Cir. 2010) (reasonable jury could find that calling a plaintiff a "black bitch" and a "nigger" on multiple occasions contributed to hostile work environment); *Hrobowski*, 358 F.3d at 477 (reasonable jury could find a hostile work environment when the plaintiff "was repeatedly subjected to hearing the word 'nigger,' including more than one occasion in which a fellow supervisor suggested that he talk to an employee 'nigger to nigger'"); *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates."). *See also Robinson v. Perales*, 894 F.3d 818, 828 (7th Cir. 2018) ("[M]ultiple uses of the word n- - - -r in combination with [the supervisor's] heightened scrutiny of [the plaintiff] and his call to others to take action against [the plaintiff] are sufficient to create a triable issue for a jury on whether the harassment was

7

hostile work environment, . . . an unambiguously racial epithet falls on the more severe end of the spectrum," *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002), especially an epithet as "poisonous" as the n-word, *Gates*, 916 F.3d at 633. Even "[o]ne instance of conduct that is sufficiently severe may be enough." *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 601 (7th Cir. 2014).

Defendants point out that the court of appeals has most often found that the use of the n-word could create a hostile work environment when the plaintiff's own supervisor used the term against him. The court of appeals recently emphasized this point in *Gates*. In the context of finding that a supervisor's use of the n-word was enough to create a hostile work environment, the court stated that there is a "difference in our hostile environment cases between having the plaintiff's co-workers show racial hostility and having the plaintiff's supervisor show racial hostility." 916 F.3d at 633. The court also said that it "would likely reach a different conclusion in this case" if "the only evidence of racial harassment [the plaintiff] had was a co-worker's use of the three epithets," *id.* at 640. None of the moving defendants in this case had any supervisory authority over Phillips, so that factor undermines Phillips's claim.

The lack of supervisory authority is a significant factor, but it isn't dispositive. "[T]he distinction between supervisor and coworker misconduct in no way determines whether a plaintiff can state a hostile work environment claim in the first instance. Indeed, we have routinely reviewed hostile work environment claims arising exclusively from the conduct of coworkers." *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 951 (7th Cir. 2005).

---

severe or pervasive enough to constitute a hostile work environment.").

8

Again, the ultimate question is whether the conduct is "severe or pervasive." In evaluating that question, courts look at multiple factors: "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Gates*, 916 F.3d at 940. All things being equal, a supervisor's use of epithets is more severe than a co-worker's because the supervisor's authority allows him or her to more easily alter the employee's terms and conditions of employment.

But exercising authority over the plaintiff isn't the only way to change his terms or conditions of employment. A court must also consider whether the conduct is "physically threatening or humiliating." In this case, Phillips alleges that Gallagher yelled at him angrily while advancing toward him, called him "nigger" multiple times in front of the entire crew, and told him that he was "not wanted" and should "go back to where you belong." That conduct is reasonably interpreted as both humiliating and threatening. And Phillips says that he *did* feel threatened, so Phillips has adequately alleged that the harassment was both objectively and subjectively severe. That distinguishes Phillips's situation from that in *Smith v. Illinois Dep't of Transportation*, 936 F.3d 554, 561 (7th Cir. 2019), in which the court rejected a hostile-work-environment claim because the plaintiff "introduced no evidence that [the co-worker's] use of the n-word changed his subjective experience of the workplace."

Phillips's allegations are also distinguishable from other cases in which the court of appeals rejected hostile-work-environment claims based on a co-worker's use of the n-word. *See Nichols*, 755 F.3d at 601 (coworker called plaintiff "a black n——r" while passing by him but later said that she was "joking"); *Smith v. Ne. Illinois Univ.*, 388 F.3d 559, 566 (7th Cir. 2004) (plaintiff was never present when coworker used the n-word); *Dandy v. United Parcel Serv., Inc.*,

9

388 F.3d 263, 271–72 (7th Cir. 2004) (racial epithets not directed at plaintiff); *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 639 (7th Cir. 2001) (racially derogatory comments were part of "office banter"). The conduct alleged in this case cannot be dismissed as mere "banter" or a casual comment. It was confrontational and reasonably perceived as threatening. Phillips has adequately alleged that Gallagher's conduct was sufficiently severe to sustain a claim under § 1981.

Defendants also contend that Phillips hasn't adequately alleged any contractual interference because he doesn't say that he was unable to perform his job duties as a result of Gallagher's harassment. But that's not a separate requirement. Under the cases that defendants themselves cite, severe or pervasive harassment is itself sufficient interference. *See Hancick*, 653 F.3d at 544; *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 647 (7th Cir. 2011); *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271 (7th Cir. 2004). Whether harassment "unreasonably interferes with an employee's work performance" is only one factor to consider. *Gates*, 916 F.3d at 940. In any event, it is reasonable to infer at the pleading stage that Phillip's work performance was impaired in light of his allegations that he felt threatened and feared a physical assault. *See Ellis*, 650 F.3d at 647 (it is reasonable to infer that harassment altered conditions of employment if it caused "psychological distress").

Defendants make a related argument that Phillips must allege that they had "sufficient authority" to interfere with his employment contract. And because none of them were his supervisors, they say that he can't meet this requirement. But the only case they cite for that proposition is *Coleman & Williams, Ltd. v. Wisconsin Dep't of Workforce Dev.*, 401 F. Supp. 2d 938, 947 (E.D. Wis. 2005), which wasn't a harassment case. The plaintiff in *Coleman* was alleging that the defendant prevented him from *obtaining* a contract with a third party. In that

10

context, it makes sense to require the plaintiff to show that the defendant had the power to interfere. Again, in a hostile-work-environment case, the harassment itself is interference. As discussed above, the defendant's authority over the plaintiff may be relevant in determining whether the harassment was sufficiently severe or pervasive, but it's only one factor, not a requirement.

The court concludes that Phillips has adequately alleged conduct that is actionable under § 1981. It is reasonable to infer at the pleading stage that he was subjected to severe harassment that interfered with the terms and conditions of his contractual relationship.

**C.  Can Mega Concrete and Noble be held liable for Gallagher's conduct?**

Section 1981 requires the plaintiff to show intentional race discrimination. *See Morris*, 89 F.3d at 413. There is no dispute that Phillips has adequately alleged that *Gallagher*'s conduct was racially motivated. But Phillips doesn't allege that Noble or Mega Concrete intended to discriminate against him on the basis of race, so those defendants contend that they can't be held liable under § 1981.

But the issue isn't that straightforward. The court of appeals has assumed in multiple cases that the same agency principles that apply to claims under Title VII also apply to § 1981. *See Hancick*, 653 F.3d at 544; *Ellis*, 650 F.3d at 647; *Dandy*, 388 F.3d at 271; *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1282 (7th Cir. 1977). And, as already noted, an employer can be held liable under Title VII in some circumstances for the harassment committed by an employee. *See Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013).

The court of appeals hasn't explained the basis for its assumption that employers can be held liable under § 1981 for discriminatory conduct of their employees. But other courts have. For example, in *Uhler v. Beach Park, LLC*, No. 06 C 3473, 2006 WL 8460360, at *3

11

(N.D. Ill. Dec. 22, 2006), the court cited *Meyer v. Holley*, 537 U.S. 280, 285–86 (2003), which holds that courts should assume that "ordinary tort-related vicarious liability rules" apply to a federal civil rights tort action and that those rules "ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." Relying on *Meyer*, *Uhler* concluded that traditional agency principles should apply to § 1981 claims because § 1981 is a tort statute, and it doesn't "express[] an intent to override the legal background of ordinary tort-related vicarious liability rules." *Uhler*, 2006 WL 8460360, at *3.

*Uhler* is persuasive, and it is consistent with both the assumption of the court of appeals and also with Justice O'Connor's opinion that a defendant can be held vicariously liable under § 1981 for the discriminatory conduct of another party if the defendant "maintain[ed] some control over [that party's] activities." *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 395 (1982) (O'Connor, J., concurring). Other courts have reached the same conclusion. *See, e.g.*, *Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co.*, 405 F.3d 764, 773–74 (9th Cir. 2005) ("Agency principles limit vicarious liability in § 1981 claims as in Title VII claims."); *Odeluga v. PCC Cmty. Wellness Ctr.*, No. 12–cv–7388, 2013 WL 4552866, at *5 (N.D. Ill. Aug. 27, 2013) ("A § 1981 plaintiff may pursue a defendant for the civil rights liabilities of its agents under a respondeat superior, or vicarious liability, theory.").

Following the guidance of these cases, the court concludes that Phillips isn't required to prove that Mega Concrete and Noble acted with discriminatory intent if he can show that they would be held liable under traditional agency principles. Phillips alleges that Mega Concrete was Gallagher's employer, and defendants say that Noble is the "sole member" of Mega Concrete, Dkt. 33, at 1, which suggests that Gallagher could qualify as those defendants' agent.

Neither side discusses whether Phillips has adequately alleged the necessary agency relationship among Mega Concrete, Noble, and Gallagher, so it would be premature to resolve the agency issue now. But any party is free to raise the issue in a motion for summary judgment.

**D. State-law claims**

Defendants ask the court to decline to exercise supplemental jurisdiction over Phillips's state-law claims against them if the court dismisses the § 1981 claims. *See* 28 U.S.C. § 1367(c)(3). The court is allowing the § 1981 claims to proceed, so defendants' request is moot.

ORDER

IT IS ORDERED that the motions to dismiss filed by defendants Mega Concrete Construction, LLC, and Connie Noble, Dkt. 15, and Robert Gallagher, Dkt. 35, are DENIED.

Entered January 21, 2021.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge