IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL PHILLIPS,

                         Plaintiff,

    v.                                                      OPINION and ORDER

MEGA CONCRETE CONSTRUCTION, LLC,                        20-cv-658-jdp
CONNIE NOBLE, ROBERT GALLAGHER,
and ATLANTIC STATES INSURANCE COMPANY,

                         Defendants.

---

This case arises out of an incident on the morning of May 30, 2018, when plaintiff Michael Phillips, was working as a carpenter at a construction site in DeForest, Wisconsin. He heard defendant Robert Gallagher (a supervisor for defendant Mega Concrete Construction, LLC) yelling at other workers, so he tried to diffuse the situation by speaking to Gallagher. But Gallagher, who is White, lashed out at Phillips, who is Black. Gallagher cursed at Phillips, called him "nigger" multiple times, and told him to "get out" while advancing toward him. Phillips later complained to defendant Connie Noble (a part owner of Mega Concrete), telling her that he was "scared for [his] life" with Gallagher on site. But neither she nor the company took any action against Gallagher other than asking him to apologize, which he refused to do, instead using it as an opportunity to call Phillips a "nigger" again. Despite this, Noble told Phillips that Gallagher was "one of our best guys" and they needed him to "get the job done."[1]

---

[1] This court's general practice is to quote the coarse language of the parties and witnesses where the exact language is material as it is here. The court, and ultimately the jury, will evaluate Gallagher's invective with the words that he used.

Phillips is suing Mega Concrete, Gallagher, and Noble under 42 U.S.C. § 1981, which prohibits certain forms of race discrimination. He also asserts state-law claims for negligent training, supervision, and retention, intentional infliction of emotional distress, and negligent infliction of emotional distress. Defendant Atlantic States Insurance Company is named because it is Mega Concrete's insurer.

Mega Concrete, Gallagher, and Noble move for summary judgment on all claims against them. Dkt. 92. Atlantic States didn't participate in the motion or file its own, so the court will refer to the other three defendants as simply "defendants" for the remainder of the opinion.

Defendants view the incident giving rise to Phillips's claims as a brief encounter involving some offensive words and no serious harm. But a reasonable jury could disagree with that assessment, both because of the unique ability of the n word to injure the listener and because of the threatening and humiliating context in which Gallagher used the word multiple times. Phillips also testified in depth about the fear and anxiety he experienced after the incident, which further supports a view that Gallagher subjected him to a hostile-work environment because of his race, in violation of § 1981.

Defendants also contend that Mega Concrete can't be held liable because there were no further incidents of harassment after May 30. But an employer can be liable under federal civil rights law for failing to adequately prevent *or* remedy harassment. In this case, a reasonable jury could find that Mega Concrete didn't provide an adequate remedy, causing Phillips not only to fear for his own safety but also to question whether Mega Concrete's failure to take corrective action was an indication that he wasn't wanted and didn't belong on the work site.

The court will allow Phillips's federal claim against Gallagher and Mega Concrete to proceed to trial. But the court agrees with defendants that Noble can't be sued under § 1981

2

or the common law under the circumstances of this case. So the court will grant defendants' summary judgment motion as it relates to her. The court will also dismiss some of the state-law claims and allow others to proceed, for the reasons explained in the opinion.

## UNDISPUTED FACTS

The following facts are undisputed for the purpose of summary judgment, except where noted.

The events of this case took place in May and June 2018 at a construction site for six multi-unit condominium buildings in DeForest, Wisconsin. There were two sets of three buildings on each side of a dirt road.

Phillips was a subcontractor for Precision Carpentry, LLC, which was hired to do the framing for all six buildings. Mega Concrete was hired to pour the foundations. During the time relevant to this case, Norm Mickelson "ran the operations" at Mega. He is now deceased. Noble is Mickelson's daughter. She was a member of the company, owning a 49 percent share. Gallagher was a foreman supervisor for Mega Concrete.

On the morning of May 30, 2018, Precision and Mega Concrete were working on different buildings directly across the road from each other, about 50 feet apart. While on the Precision job site, Phillips overheard "a bunch of yelling and name calling." Dkt. 110, ¶ 45. Gallagher was yelling at Precision workers for putting their materials in what Gallagher perceived to be Mega Concrete's area. Gallagher called the Precision workers "stupid son of bitches," "idiots," and "fuckin' retards," and he told them to "keep your shit away from our work area."

3

Phillips walked over to the area where Gallagher was yelling. There were about 12 workers in the area, some who were with Precision, some who were with Mega Concrete, and some who were with a roofing company. All of them were White except for Phillips and one other person. Dkt. 89 (Phillips Dep. 53:16–54:9). Phillips didn't have any previous contact with Gallagher, but Phillips believed Gallagher to be a supervisor because he had seen Gallagher driving a Mega Concrete company vehicle.

Phillips apologized to Gallagher "for whatever happened," but he told Gallagher that there was "no need for the language calling." Dkt. 89 (Phillips Dep. 37:3–7). Gallagher didn't accept Phillips's apology or apologize himself for using harsh language. Instead, Gallagher swiftly escalated the situation, saying to Phillips, "Who the fuck are you, you nigger?" or "Fuck you, nigger. Who are you?" Dkt. 110, ¶ 56 and Dkt. 111, ¶ 18. Gallagher also said, "You don't belong here, you fuckin' nigger. . . .We don't want you here. Get out of here." Dkt. 110, ¶ 56.

A witness observed that Phillips's face "looked like he just got kicked in the nuts" after Gallagher called him the n word. Dkt. 111, ¶ 111. Phillips said that it felt like "a punch," and he was "short of breath." Dkt. 89 (Phillips Dep. 110:2–7).

When Phillips asked "what the hell" Gallagher had just called him, Gallagher used the word again, stating, "You guys call each other niggers all the time in your music. You're just a fuckin' nigger." According to another witness, Gallagher said, "What are you going to do about it?" when Phillips challenged Gallagher for using the n word. Dkt. 90 (Vodraska Dep. 27:1–4). The same witness also said that Gallagher became "very aggressive with his demeanor and his voice." *Id.* at 30:17. When asked about Gallagher's signs of aggression, the witness noted Gallagher's "fast movement, loud voice, his growling face, you know, like mean-mugging." *Id.* at 29:11–12.

Gallagher began advancing toward Phillips, getting within three to six feet of him, as if he wanted to start a "physical altercation" with Phillips. *Id.* at 33:7–8. Gallagher is 6'1" and weighs about 220 pounds. Phillips is 5'6" and "much smaller in stature." Dkt. 111, ¶ 31. When Phillips saw Gallagher "trying to charge" at him, Phillips felt threatened, so he picked up a piece of wood to protect himself. Dkt. 89 (Phillips Dep. 49:22–50:7). But other Precision workers "grabb[ed]" Phillips and then Gallagher "just kind of deescalated." Dkt. 89 (Phillips Dep. 46:24–47:3).

Another Mega Concrete employee apologized to Phillips and gave Phillips a business card with the office phone number for Mega Concrete. Phillips's supervisor arrived on the scene and asked Phillips what was wrong. But Phillips couldn't answer because he was "lost for words"; all he could do was point toward the job site before he walked away. Dkt. 89 (Phillips Dep. 46:8–13).

After calling his wife to tell her what just happened, Phillips called the number to report Gallagher's conduct. Phillips says he spoke to Noble, who told him she would be on the job site in a couple of hours. Noble denies that she spoke with Phillips at this time. Phillips also spoke with his coworkers. They agreed to "watch out" for Phillips, accompanying him on lunch breaks and even trips to the bathroom because he "didn't know what to expect" from Gallagher. *Id.* at 58:11–19.

Gallagher called Mickelson and gave his version of the story. Gallagher admitted to Mickelson that he had called Phillips "a fucking nigger." Mickelson contacted Noble, directing her to investigate the situation.

When Noble arrived a couple hours later, she spoke to Gallagher, who again admitted that he had called Phillips a "fucking nigger." According to Noble, she told Gallagher, "you

5

know better" and "that's not right." Dkt. 110, ¶ 97. Noble then spoke to Phillips, and she apologized for what Gallagher had said, telling him, "I want you to go over here with me to Gallagher, and he's going to apologize to you." Dkt. 89 (Phillips Dep. 65:12–14). Phillips told her no, saying that he didn't believe Gallagher was going to apologize. But Noble continued asking, so Phillips eventually agreed, and they walked over to Gallagher.

Gallagher refused to apologize. He said, "Fuck this nigger. They call each other that in rap music all the time." Noble denies that she heard Gallagher say this. Dkt. 88 (Noble Dep. 48:8–10 and 49:4–6). After Gallagher refused to apologize, Noble said, "I'm out of here . . . you need to, you know, get back to work," and "That's it, okay. Forget it then."

Noble later filled out a "complaint reporting form" on *Gallagher*'s behalf, alleging that Phillips's supervisor had hit Gallagher. Dkt. 101-4. She omitted any reference to Gallagher using the n word.

Phillips spoke with Noble again the day after the incident. He asked Noble why Gallagher was still on the job site. He said, "I'm scared for my life here. I don't know this guy. I don't—I don't know this guy. I just don't know about him, you know." Dkt. 89 (Phillips Dep. 73:19–21). Noble told Phillips that Gallagher was "one of our best guys" and they needed him to "get the job done." Dkt. 110, ¶ 124.

Phillips and Gallagher had no further interactions, but Phillips often saw Gallagher on the site for the next few days. Phillips felt "very unsafe," and he was anxious when he came to work. Dkt. 89 (Phillips Dep. 154:1–8 and 156:7–15). When asked to describe what it was like working on the site after the incident, Phillips provided the following explanation:

> It was—it was difficult. Did I get the job done accordingly? Yes, but still in my mind I just have—I just have this over my—just over my head that it was like Am I in a safe or unsafe environment? Am I going to make it home today? Am I not? Even

> What's going to happen today? I don't know. I was just showing
> up to provide for my family. I didn't know what was going to
> happen, just trying to do my job.

*Id.* at 156:20–157:3. Coworkers observed that Phillips was "depressed," "down," "out of sorts,"

and "frustat[ed]" in the days after the incident.  Dkt. 90 (Vodraska Dep. 42:20–43:6) and

Dkt. 100 (Anderson Dep. 38:2–24).

Noble is not aware of any disciplinary action that Mega Concrete took against Gallagher

as a result of his conduct against Phillips. Gallagher was on the site on June 1, June 4, June 5,

June 6, and June 7. Phillips says that Gallagher was also there on May 31. Dkt. 89 (Phillips

Dep. 72:5–73:9). Gallagher left his employment with Mega Concrete for reasons unrelated to

Phillips sometime before June 15, 2018.


ANALYSIS

**A.  Federal claim**

Section 1981 prohibits intentional race discrimination in the making or enforcing of a

contract. *See Morris v. Office Max, Inc*., 89 F.3d 411, 413 (7th Cir. 1996). In the order denying

defendants' motion to dismiss, the court reached four conclusions that are relevant to this

claim:

(1)  Section 1981 doesn't require a contract between the plaintiff and the defendant,
     only that the defendant interfered with the plaintiff's contract, including an
     employment contract with a third party;

(2)  being subjected to a racially hostile-work environment can qualify as discriminatory
     interference with a contract under § 1981, *see Hancick v. Hanna Steel Corp*., 653 F.3d
     532 (7th Cir. 2011);

(3)  harassment doesn't violate § 1981 unless it is "severe or pervasive" within the
     meaning of case law under Title VII; and

(4)   an employer may be held liable under § 1981 for its own employees' conduct based on traditional agency principles.

Dkt. 45. The court will treat those conclusions as established in this opinion without need for further discussion unless they are implicated by an argument raised in defendants' summary judgment motion.

All of the defendants move for summary judgment on the ground that Gallagher's conduct wasn't severe or pervasive, so it didn't violate § 1981. Mega and Noble also contend that they can't be held liable for any wrongdoing by Gallagher.

## 1.   Severe or pervasive harassment

Harassment must be both objectively and subjectively severe or pervasive to support a federal civil rights claim. *Smith v. Illinois Dep't of Transportation*, 936 F.3d 554, 561 (7th Cir. 2019). In determining whether the plaintiff has satisfied that requirement, courts look at multiple factors: the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance. *Gates v. Bd. of Educ. of the City of Chicago*, 916 F.3d 631, 640 (7th Cir. 2019).

Defendants already argued in the context of their motion to dismiss that Gallagher's conduct wasn't sufficiently severe or pervasive to create a hostile-work environment. The court acknowledged that Gallagher's conduct may not have lasted long enough to qualify as "pervasive," but the court concluded that Phillips's allegations supported an inference that he was subjected to "severe" harassment, both objectively and subjectively. Either severe *or* pervasive harassment is enough to support a hostile-work environment claim, *Lapka v. Chertoff*, 517 F.3d 974, 983 (7th Cir. 2008), so the court allowed Phillips to proceed with his claim. *See* Dkt. 45, at 5–11.

8

The court acknowledged that the use of a racial slur in the workplace doesn't always create a hostile-work environment, but the allegations in this case involved more than the isolated utterance of an offensive word. The court relied on two key factors to support its conclusion that Phillips adequately alleged a hostile-work environment.

First, the n word is not just a slur:

> [I]t may be unique in American English in its ability to offend, provoke, and injure. The speaker's purpose is often to disrespect, intimidate, and even dehumanize the listener. Because the word's history is so intimately connected with violence and denigration, it can be inherently threatening in a way that other epithets are not.

*Id.* at 9 (citations omitted). As one prominent scholar observed, the n word is "the nuclear bomb of racial epithets." Randall Kennedy, Nigger: The Strange Career of a Troublesome Word 28 (2002).

Second, the context in which Gallagher used the n word made the incident more humiliating and threatening. Unlike some of the cases that defendants relied on, Gallagher didn't use the n word casually or as part of "office banter." *Id.* at 10. Rather, Gallagher was loud, confrontational, and angry. He was advancing toward Phillips and told him that he was "not wanted," that he didn't "belong." *Id.* at 9. He spoke in front of workers from multiple companies, making the experience even more humiliating for Phillips. *Id.* From a subjective standpoint, Phillips alleged that he did feel threatened and feared a physical assault. *Id.* at 9–10.

Because the court has already determined that the allegations in the complaint were sufficient to show a hostile-work environment, the question now is whether the evidence Phillips submitted at summary judgment bears out what he alleged. The court concludes that it does. As summarized in the undisputed facts above, Phillips submitted evidence regarding

9

Gallagher's use of the n word, the number of times he used it, and the threatening and humiliating context of Gallagher's multiple uses of the word. Phillips also more fully explained in his deposition the effect that Gallagher's conduct had on him:

> Man, I felt—I can't even say I felt the exact way my ancestors felt, but damn near. It was a punch. It was the worst ever. I felt belittled, humiliated. I felt this big (indicating). I couldn't even— it's almost unexplainable how I felt. I was, like, short of breath damn near. You know what I mean? It's hurtful. You would never understand it. No matter how much I sit here and explain it to you, you still wouldn't understand it. And you don't want to.

Dkt. 89 (Phillips Dep. 110:2–11). At another point in his deposition, Phillips said that he "felt like [he] was like some animal or something." *Id.* at 85:16–17. Based on this testimony and the other evidence that Phillips submitted, a reasonable jury could find that Gallagher's repeated use of the word was more than just offensive; it was akin to a verbal assault, both objectively and subjectively.

Defendants don't engage with the reasoning of the order denying the motion to dismiss. Rather, they rely on the same arguments that court has already rejected. So the court concludes that defendants are not entitled to summary judgment on the ground that Gallagher's conduct wasn't severe.

### 2. Mega Concrete's liability

The parties agree that an employer isn't automatically liable for an employee's violation of § 1981. Rather, agency principles apply. Phillips asks the court to look to agency principles under Wisconsin law, but this is a federal claim, so federal law applies. In other cases, the Court of Appeals for the Seventh Circuit has applied the same agency principles in § 1981 claims as it does under Title VII. *See Hancick*, 653 F.3d at 544; *Ellis v. CCA of Tennessee LLC*, 650 F.3d

640, 647 (7th Cir. 2011). Neither side explains why this court should depart from that practice, so the court will apply the Title VII standard.

Under Title VII, the court applies a negligence standard to determine employer liability unless the employee who committed the harassment was the plaintiff's supervisor. *See Yancick*, 653 F.3d at 549. It's undisputed that Gallagher had no supervisory authority over Phillips, so the question is whether Mega Concrete was "negligent either in discovering or remedying the harassment." *Vance v. Ball State University*, 646 F.3d 461, 469–70 (7th Cir. 2011) (internal quotation marks omitted)). In this case, Phillips doesn't contend that Mega Concrete was negligent in "discovering" the harassment, but he does contend that Mega Concrete was negligent in providing a remedy. In that context, the employer can avoid liability if it takes "prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Porter v. Erie Foods Intern., Inc.*, 576 F.3d 629, 636 (7th Cir. 2009).

In this case, the only corrective actions that Mega Concrete took were telling Gallagher "that's not right" and asking him to apologize to Phillips. And when Gallagher refused to do even that, Mega Concrete just gave up. It did not fire Phillips or take any other disciplinary action against him, subject him to additional training, direct him to stay away from Phillips, or do anything to ensure that Phillips would be protected from further harassment.[2] A reasonable jury could find that Mega Concrete's lax approach was negligent.

---

[2] In their proposed findings of fact, defendants cite evidence that Noble drafted a letter at Mickelson's direction to terminate Gallagher's employment. Dkt. 110, ¶ 144. But she doesn't know the reason for the alleged termination, and Gallagher denies that he was terminated. Dkt. 111, ¶¶ 98, 101. The letter is dated June 15, 2018, and its undisputed that Gallagher had already quit working for Mega Concrete by then for reasons unrelated to Phillips. *Id.*, ¶ 102–04. In any event, defendants don't contend in their summary judgment briefs that they fired Gallagher because of the May 30 incident, so it isn't necessary to consider that issue.

In arguing that summary judgment is appropriate, Mega Concrete relies on the fact that Gallagher and Phillips didn't physically interact with each other after May 30, which shows that "the actions by Mega Concrete were obviously sufficient to address the issue." Dkt. 95, at 16. But the court is "not to focus solely upon whether the remedial activity ultimately succeeded, but instead should determine whether the employer's total response was reasonable under the circumstances as then existed." *Howard v. Cook Cty. Sheriff's Off.*, 989 F.3d 587, 608 (7th Cir. 2021) (internal quotation marks omitted). Even when there are no further incidents of harassment, the employer may be held liable for a negligent response. *See, e.g., Berry v. Chicago Transit Authority*, 618 F.3d 688, 692 (7th Cir. 2010).

In this case, the lack of additional interaction between Phillips and Gallagher appears to have been fortuitous. Defendants cite no evidence that they instructed Gallagher to stay away from Phillips, changed Gallagher's duties or his schedule, or took any other action to prevent further contact. Defendants say that it was reasonable to assume that there would be no contact because there is no evidence that Phillips and Gallagher had any contact during the time that they were both working at the site before May 30. This argument fails for two reasons.

First, defendants don't cite any evidence to show either that Mega Concrete knew at the time how much contact Phillips and Gallagher had before May 30 or that Mega Concrete considered how much contact Phillips and Gallagher would be likely to have when it decided not to take more corrective action. Rather, the only evidence cited by the parties is that Mega Concrete declined to take action because Gallagher was "one of [its] best guys" and it needed him to "get the job done." Dkt. 110, ¶ 124.

Second, even if Mega Concrete did assume that no action was needed because Phillips and Gallagher would be unlikely to interact again, a jury could still reject that assumption as

unreasonable. Before May 30, Phillips and Gallagher had no reason to interact. But after May 30, it wasn't clear what Gallagher would do next. He used a vile racial slur against Phillips without provocation, acted in a threatening manner, and refused to apologize even when prompted to do so by an owner of the company. Under these circumstances, a reasonable jury could find that there was an unreasonable risk of further harassment or worse and that Mega Concrete should have done more to protect Phillips.

Even if Phillips and Gallagher didn't interact again, this doesn't mean that Phillips didn't suffer. Phillips says that he was in turmoil in the days that followed the May 30 incident. He felt "very unsafe," anxious, and agitated. Dkt. 89 (154:2–4 and 156:7–14). He wondered whether he was "going to make it home today." *Id.* at 156:24. When Mega Concrete didn't take any action against Gallagher, Phillips began to think, "[M]aybe I'm the guy that didn't have any business being around." *Id.* at 154. A reasonable jury could find that Mega Concrete's failure to take the incident more seriously caused Phillips additional harm.

Defendants contend that the court should grant summary judgment because there is little case law in which § 1981 was used to impose liability on an entity that wasn't the plaintiff's employer. But defendants raised a similar argument in support of their motion to dismiss and the court rejected it, concluding that § 1981 doesn't require an employment relationship between the plaintiff and the defendant. *See* Dkt. 45, at 3–4 (citing *Parker v. Scheck Mechanical Corp.*, 772 F.3d 502, 507 (7th Cir. 2014), *Smith v. Bray*, 681 F.3d 888, 895–96 (7th Cir. 2012), and *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008)). Defendants cite no authority that undermines the cases cited by the court. It is true that most hostile-work environment claims are brought against an employer for harassment by a coworker or supervisor. But that isn't a reason to limit the reach of § 1981, so long as the facts of the case

13

fall within the text of the statute and the relevant case law applying it. In this case, the court has determined that Phillips's § 1981 claim is consistent with both the statutory text and the case law, and Mega Concrete has not identified a persuasive reason for dismissing the claim. The court will deny summary judgment to Mega Concrete on Phillips's § 1981 claim.

### 3. Noble's liability

The parties agree that Phillips can't prevail on his § 1981 claim against Noble under a vicarious liability theory. The general rule under federal civil rights statutes is that vicarious liability is imposed "upon the corporation but not upon its officers or owners." *Meyer v. Holley*, 537 U.S. 280, 282, 290 (2003).

Phillips contends that Noble can be held personally liable because she "ratified" Gallagher's discriminatory conduct by failing to take any corrective action and trying to cover up the misconduct. Phillips cites *Nanda v. Moss*, in which the court stated that "supervisory liability can be established if the conduct causing the constitutional deprivation occurs at the supervisor's direction or with the supervisor's knowledge and consent" or if the "supervisor knows about the alleged conduct and facilitates it, approves it, condones it, or turns a blind eye for fear of what he or she might see." 412 F.3d 836, 842 (7th Cir. 2005). *Nanda* was brought under 42 U.S.C. § 1983, not § 1981, but Phillips cites *Smith v. Bray*, in which the court suggested that the standard for imposing liability under § 1981 and § 1983 is the same. 681 F.3d 888, 899 (7th Cir. 2012) ("As with § 1981, individual liability under § 1983 is appropriate where the individual defendant caused or participated in a constitutional deprivation.").

Defendants contend that *Nanda* doesn't apply because Noble had no supervisory authority over Gallagher. Rather, defendants say that Mickelson had sole authority to

discipline or remove an employee. But the court need not resolve that dispute. Even if the court assumes that the § 1983 standard for imposing liability on supervisors also applies to Noble, Phillips can't meet that standard.

Phillips's claim against Noble is based on her conduct *after* Gallagher violated Phillips's rights. Under § 1983, if a supervisory official approves an unconstitutional action *before* it occurs, he can be held liable for causing the violation. *Nanda*, 412 F.3d at 842–43. But after the conduct at issue is completed, there is nothing the official can do to stop it, so she cannot be held liable. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("[Plaintiff's] argument on the merits is that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself. That proposition . . . is not correct. Only persons who cause or participate in the violations are responsible."). Failing to discipline a subordinate or take other corrective action isn't enough. *See Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

Moreover, the standard for supervisory liability doesn't relieve the plaintiff of his burden on a § 1983 discrimination claim to show that the defendant acted with discriminatory intent. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[P]urpose rather than knowledge is required to impose . . . liability on . . an official charged with violations arising from his or her superintendent responsibilities."). The same rule applies to claims under § 1981. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389 (1982) ("§ 1981 reaches only purposeful discrimination.").

Phillips hasn't adduced evidence that Noble acted with discriminatory intent or that she participated in the Gallagher's alleged violation of § 1981. Accordingly, the court will dismiss Phillips's § 1981 claim against Noble.

**B. State-law claims**

Phillips asserts three state-law claims: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; and (3) negligent training, supervision, and retention. The parties agree that Wisconsin law governs each of these claims.

**1. Intentional infliction of emotional distress**

A claim for intentional infliction of emotional distress requires the plaintiff to prove four things: (1) the defendant intended to cause emotional distress by his or her conduct; (2) the conduct was extreme and outrageous; (3) the conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) the plaintiff suffered an extreme and disabling response to the defendant's conduct. *Kopp v. Sch. Dist. of Crivitz*, 2017 WI App 80, ¶ 51, 378 Wis. 2d 740, 905 N.W.2d 843

Phillips asserts this claim against both Gallagher and Mega Concrete. Phillips says that Gallagher intentionally inflicted emotional distress on him by repeatedly using the n word against him and that Mega Concrete may be held liable for Gallagher's conduct under the doctrine of respondeat superior. Defendants raise different arguments about Gallagher and Mega Concrete, so the court will consider the claims against each defendant separately.

**a. Gallagher**

Defendants contend that Phillips can't prove two of the four elements of this claim: (1) the defendant intended to cause emotional distress by his or her conduct; and (2) the conduct was extreme and outrageous. First, defendants say that Gallagher didn't intend to cause Phillips emotional distress, citing Gallagher's testimony that he didn't intend to offend Phillips, he didn't call Phillips the n word because Phillips is Black, and that the word just "popped out" of his mouth because he was angry. Dkt. 110, ¶¶ 69–72.

16

Gallagher is free to offer that testimony at trial, but a reasonable jury wouldn't be required to accept it. Being angry isn't mutually exclusive with an intent to cause emotional distress; that is often *why* someone wants to harm another. Gallagher used the n word against Phillips only, not any of the White workers on the site whom he was arguing with. And its undisputed that he never used the n word before, Dkt. 110, ¶ 73, undermining his testimony that the word just "popped out." That testimony is also undermined by Gallagher's multiple uses of the word, including later in the day when the situation had calmed down. From these facts, Gallagher's threatening stance when using the word, and his refusal to apologize, a reasonable jury could find that Gallagher intended to cause Phillips emotional distress.

Second, defendants cite several cases from outside Wisconsin to support the proposition that the use of racial slurs doesn't qualify as extreme and outrageous conduct for the purpose of a claim for intentional infliction of emotional distress. Dkt. 95, at 25. But none of the cases involve uses of the n word or slurs used in a threatening context, as in this case. Neither side cites Wisconsin cases that provide guidance, but the Wisconsin Supreme Court has held that conduct is extreme and outrageous if "[t]he average member of the community [would] regard the defendant's conduct in relation to the plaintiff . . . as being a complete denial of the plaintiff's dignity as a person." *Alsteen v. Gehl*, 21 Wis. 2d 349, 359–60, 124 N.W.2d 312 (1963). As already discussed, the n word is unique in the English language. A primary purpose of the word *is* to deny a person's dignity. In this case, Gallagher used the term multiple times while angrily confronting Phillips and telling him to "get out" and that he didn't "belong here." Under these facts, a reasonable jury could find that Gallagher's conduct was a complete denial of Phillips's dignity as a person.

The court will deny summary judgment to Gallagher on the claim for intentional infliction of emotional distress.

### b. Mega Concrete

Under the doctrine of respondeat superior, an employer is vicariously liable for conduct of an employee performed within the scope of his employment. *James Cape & Sons Co. ex rel. Polsky v. Streu Constr. Co.*, 2009 WI App 144, ¶10, 321 Wis. 2d 522, 775 N.W.2d 277. An employee acts within the scope of his or her employment if the employee was "partially actuated by a purpose to serve the employer." *Korntved v. Advanced Healthcare, S.C.*, 2005 WI App 197, ¶¶ 11–12, 286 Wis. 2d 499, 704 N.W.2d 597 (internal quotation marks omitted). Phillips contends that Gallagher's conduct meets that standard because the impetus for his outburst was his perception that the carpenters were interfering with his job by placing equipment in Mega Concrete's area.

Defendants don't deny that Gallagher was acting within the scope of his employment. Instead, they contend that Phillips should be barred from asserting a claim against Mega Concrete because Phillips's amended complaint identifies Gallagher as the sole defendant on this claim.

Defendants' argument isn't persuasive. A plaintiff satisfies federal pleading standards so long as he gives the defendant fair notice of the factual basis of his claims. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014). The plaintiff doesn't have to identify legal theories. *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011). And "when a plaintiff does plead legal theories, it can later alter those theories." *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 540–41 (7th Cir. 2018) (internal quotation marks omitted). So a failure to match up a defendant with a particular legal theory in the complaint doesn't bar the plaintiff

18

from asserting that legal theory later, so long as the complaint provides the factual basis for that theory. *See Stahenow v. City of Eau Claire*, No. 19-cv-1058-jdp, — F. Supp. 3d —, 2021 WL 2712151, at *13 (W.D. Wis. July 1, 2021) (allowing plaintiff to proceed on negligence theory that wasn't identified in the complaint because the complaint included allegations that provided the factual basis for that claim).

In this case, Phillips's amended complaint included the facts that support his scope-of-employment theory, *see* Dkt. 81, ¶¶ 18–20, so the complaint provided defendants with fair notice. Defendants identify no unfair prejudice caused by allowing Phillips to raise a respondeat superior claim, so the court will allow the claim to proceed against Mega Concrete.

### 2. Negligent infliction of emotional distress

A claim for negligent infliction of emotional distress requires the plaintiff to prove three things: (1) the defendant's conduct fell below the applicable standard of care; (2) the plaintiff suffered "severe" emotional distress; and (3) the defendant's conduct was a cause-in-fact of the plaintiff's injury. *Terry v. J. Broad. Corp.*, 2013 WI App 130, ¶ 38, 351 Wis. 2d 479, 514, 840 N.W.2d 255, 271. Phillips asserts this claim against Mega Concrete and Noble, contending that they were negligent by encouraging Phillips to meet with Gallagher and by failing to take additional corrective action against Gallagher after the May 30 incident.

#### a. Noble

Phillips doesn't respond to defendants' argument that the claim against Noble is barred by Wis. Stat. § 183.0304, which limits the liability of members of a limited liability company when the member is acting on behalf of the company. So the court will dismiss the claim against Noble. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an argument raised by the opposing party results in waiver).

19

### b. Encouraging Phillips to meet with Gallagher (against Mega Concrete)

Defendants object to this claim in a footnote on the ground that Phillips didn't raise it in his complaint. Dkt. 112, at 14 n.5. Phillips did include the factual basis for this claim in his complaint because he alleged that Noble asked him to meet with Gallagher and that Gallagher then called him a "nigger" again. Dkt. 81, ¶¶ 29–30. The complaint didn't match those allegations with a negligence legal theory, but, again, it didn't have to. *See Stabenow*, 2021 WL 2712151, at *13.

Defendants also say that "attempting to diffuse the situation between two men" isn't negligent as a matter of law. Dkt. 112, at 15. But one can be well intentioned and negligent at the same time. The question is whether Mega Concrete "knew or should have known that its employee would subject a third party to an unreasonable risk of harm." *L.L.N. v. Clauder*, 209 Wis. 2d 674, 698–99, 563 N.W.2d 434, 445 (1997). A reasonable jury could find that a meeting between a victim of harassment and his harasser so soon after the incident could cause him more emotional distress.

Defendants raise no other objections to the claim, so the court will allow it to proceed to trial.

### c. Failing to take corrective action (against Mega Concrete)

Defendants' only argument for this claim is that Phillips wasn't harmed by the failure to take corrective action because Gallagher and Phillips didn't speak or interact again. But as discussed in the context of Phillips's § 1981 claim against Mega Concrete, Phillips testified that he was harmed in other ways because he remained fearful and anxious about the possibility of another incident, and Mega Concrete's lax response led him to question whether he belonged

at the work site. Defendants identify no reason why those injuries aren't sufficient to sustain a negligence claim against Mega Concrete. So the court will allow this claim to proceed.

### 3. Negligent training, supervision, and retention

Phillips asserts this claim against Mega Concrete only. The parties agree on the elements of the claim: (1) the employer owed a duty of care to the plaintiff; (2) the employer breached its duty; (3) a wrongful act or omission of an employee was a cause-in-fact of the plaintiff's injury; and (4) an act or omission of the employer was a cause-in-fact of the wrongful act of the employee. *Hansen v. Texas Roadhouse, Inc.*, 2013 WI App 2, ¶ 18, 345 Wis. 2d 669, 686, 827 N.W.2d 99, 107. Phillips identifies three alleged acts of negligence by Mega Concrete that caused three distinct harms: (1) failing to give Gallagher any anti-discrimination or harassment training, which was one cause of the May 30 incident; (2) asking Phillips and Gallagher to meet, which led to another instance of Gallagher using the n word; and (3) allowing Gallagher to stay on the job site after the May 30 incident, which caused Phillips more emotional distress.

### a. Failure to train Gallagher

It's undisputed that Mega Concrete had an employee handbook that prohibited harassment. Dkt. 111, ¶ 75. But Gallagher denies that he ever received that handbook, Dkt. 91 (Gallagher Dep. 89:6–13), and Mega Concrete doesn't identify any other relevant training he received. So the court will assume for the purpose of summary judgment that Mega Concrete failed to instruct Gallagher that the use of racial slurs is inappropriate.

Neither side cites any Wisconsin case law addressing the scope of an employer's duty to train an employee, and the court's own research revealed nothing that was on point. But defendants cite *Fletcher v. St. Paul Pioneer Press*, a Minnesota case in which the court rejected a claim that an employer was negligent for failing to conduct anti-harassment training:

21

> Appellant complains that the Pioneer Press failed to provide racial sensitivity training for its employees. While such training may be good practice, an employer is not negligent for failing to provide training, absent evidence that the training is necessary. An employer is not required to assume its employees will behave in a racially offensive manner unless it has reason to know otherwise

No. C7-95-2, 1995 WL 379140, at *4–5 (Minn. Ct. App. June 27, 1995). *Fletcher* is consistent with Wisconsin's rule in the context of negligent supervision that an employer is liable "only if it knew or should have known that its employee would subject a third party to an unreasonable risk of harm." *L.L.N. v. Clauder*, 209 Wis. 2d 674, 698–99, 563 N.W.2d 434, 445 (1997).

In this case, Phillips identifies no reason why Mega Concrete should have foreseen the May 30 incident. And Phillips doesn't explain how Mega Concrete could be held liable on a failure-to-train theory without evidence of foreseeability. The court will grant summary judgment to Mega Concrete on this aspect of Phillips's claim.

### b. Encouraging Phillips to meet with Gallagher

Defendants object to this claim on two grounds. First, they contend that encouraging Phillips and Gallagher to meet wasn't negligent. But the court has already rejected that contention. Second, defendants say that there was "no connection between Mega Concrete's actions and Gallagher's actions." Dkt. 112, at 15, Defendants don't explain what they mean by this. It was Noble's suggestion that Phillips meet with Gallagher, and Phillips wouldn't have been subjected to additional verbal abuse from Gallagher without that meeting, so a reasonable jury could find that Mega Concrete's actions were a cause-in-fact of that abuse.

Defendants may mean to argue that it wasn't reasonably foreseeable that Gallagher would use the n word again, particularly in front of Noble. But Phillips doesn't have to show that the specific injury was reasonably foreseeable, only that some harm was foreseeable. *See Miller v. Wal–Mart Stores, Inc.*, 219 Wis.2d 250, ¶ 9, 580 N.W.2d 233 (1998) ("The duty of

any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act." (internal quotation marks omitted)). A reasonable jury could find that some harm was foreseeable by having Phillips meet with his harasser, so the court will deny Mega Concrete's summary judgment motion on this claim.

### c. **Failing to take corrective action**

Defendants' only argument on this claim is that Phillips wasn't harmed by that decision because Gallagher and Phillips didn't speak or interact again.[3] The court has already rejected that contention, so this claim may proceed to trial.

## CONCLUSION

The court concludes that Phillips has adduced evidence that Gallagher subjected him to a racially hostile-work environment and that Mega Concrete failed to adequately remedy the harassment. So Gallagher and Mega Concrete are not entitled to summary judgment on Phillips's claim under § 1981. But Noble didn't participate in the harassment, so Phillips's § 1981 claim against her fails.

As for the state-law claims, Phillips may proceed on theories that Gallagher intentionally inflicted emotional distress on Phillips, that Mega Concrete may be held liable for Gallagher's conduct on the basis of respondeat superior, and that Mega Concrete was negligent by asking Phillips to meet with Gallagher soon after the initial harassment occurred and by failing to take

---

[3] Phillips says that Gallagher's "wrongful act or omission" under the third element of this claim was his "mere continued presence" at the work site. Dkt. 104, at 27. Defendants don't challenge this contention, so the court need not consider that issue.

reasonable corrective action after the May 30 incident. The court will dismiss the remaining state-law claims.

ORDER

IT IS ORDERED that defendants' motion for summary judgment, Dkt. 92, is GRANTED in part and DENIED in part. The motion is granted on plaintiff Michael Phillips's claims against defendant Connie Noble, and she is DISMISSED with prejudice. The motion is also granted on Phillips's claims that defendant Mega Concrete Construction, LLC was negligent by failing to train Gallagher. The motion is denied in all other respects.

Entered January 27, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge