IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL PHILLIPS,

                        Plaintiff,

   v.                                             OPINION and ORDER

MEGA CONCRETE CONSTRUCTION, LLC,
ROBERT GALLAGHER, and ATLANTIC STATES         20-cv-658-jdp
INSURANCE COMPANY,

                        Defendants.

---

Trial in this case brought under 42 U.S.C § 1981 and state law is scheduled for April 6. At the final pretrial conference, the court gave the parties an opportunity to submit briefs on any remaining objections that they have. Both sides have taken advantage of that opportunity, and this opinion resolves those objections.

ANALYSIS

A. Impeachment evidence related to Phillips's emotional distress

Both sides seek reconsideration of the court's in limine ruling that defendants may impeach Phillips with evidence that he was terminated from his job with Precision if he offers any testimony about distress he suffered or actions he took that could be reasonably explained at least in part by his termination. Phillips didn't raise an objection to this ruling at the final pretrial conference. But he argues now that evidence that he was terminated should be barred under Federal Rule of Evidence 403. For their part, defendants repeat their objection from the conference that they should be permitted to present evidence not only of the fact of termination, but also the circumstances surrounding it.

The court will consider defendants' objections first, which have evolved significantly since their motions in limine brief. Rather than just focusing on evidence about the alleged termination, defendants now seek permission to offer four types of evidence directed at rebutting Phillips's testimony about his emotional distress.

1. **Publicity from this lawsuit**

Defendants ask to present evidence that "publicity from [this] lawsuit" has caused Phillips's emotional distress. Dkt. 165, at 5. In the abstract, such evidence could be admissible. But defendants' evidence is speculative. They say only that "[Connie] Noble will testify at trial that multiple contractors have asked her about the lawsuit." *Id.* Defendants don't explain what the contractors said or how it relates to Phillips. Regardless, a third party's statements to Noble provide no insight into *Phillips's* emotional distress. The court won't allow Noble's proposed testimony.

2. **Interference with Phillips's job**

Defendants ask to present evidence that Phillips himself believed that he was being "blacklisted" by Jeff Hariu (his former boss at Precision Carpentry) and Classic Custom Homes, which was the general contractor for the DeForest condominium project and many other Precision projects. In support of this request, defendants cite Phillips's deposition in which Phillips said that he stopped working for Precision because Classic didn't want him working on their projects after he sued them, and Hariu chose to placate Classic by keeping Phillips off Classic projects, which represented most of Precision's jobs. Dkt. 89 (Phillips Dep. 90:18–91:18, 102:3–15).

The court would not refer to the cited evidence as "blacklisting," but it does provide an alternative basis for finding that Phillips was dissatisfied with his situation in Wisconsin. And

2

Phillips doesn't identify any grounds for excluding this evidence in his response brief. So the court will allow defendants to ask Phillips about his perception that Classic was keeping him from getting work.

But there is a caveat. The important point for purposes of impeachment is that Phillips himself believed that Classic was preventing him from getting work. The precise reason for Phillips's belief isn't important. And allowing in testimony about Phillips's now dismissed claim against Classic would raise questions about the basis for that claim, questions that aren't relevant to this case and would only confuse the jury about what the important issues are. So the court adheres to its prior ruling that defendants may not ask Phillips about his claims against any of the dismissed defendants.

### 3. Circumstances surrounding Phillips's alleged termination from Precision

Defendants want to present evidence that Phillips "pulled a knife on a coworker [and] texted a coworker that he would shoot him in the knee," Dkt. 165, at 7, which defendants say are two of the reasons that Phillips was fired from Precision. Defendants insist that the evidence would not create a trial within a trial because defendants will present the evidence through a secretly recorded telephone call between Phillips and his then-boss, and then Phillips "can deny his prior statements and the prior statements can stand on their own." *Id.* But this argument assumes that Phillips wouldn't put in his own evidence about these issues. If the court were to allow defendants to put in their evidence, the court would also have to allow Phillips to put in evidence explaining the context of those statements. There is simply no way to avoid a trial within a trial on this issue without causing unfair prejudice to Phillips.

In any event, defendants' arguments about the potential delay caused by the evidence miss a larger point, which is the court's conclusion in both the motions in limine order and the

final pretrial conference order that the evidence is barred under Rule 403 because it has little probative value and is highly prejudicial. Defendants don't even attempt to address that issue in their brief. In the court's view, this is not a close call. Despite three opportunities to do so, defendants still haven't explained how Phillips's alleged use of a weapon or making threats to coworkers helps rebut Phillips's testimony about the causes of his emotional distress. Any evidence about the reasons for Phillips's alleged termination from Precision is excluded.

### 4. Evidence about the fact of termination

This leaves the question whether defendants may present more general evidence that Phillips was fired from Precision. In the motions in limine order and the final pretrial conference order, the court concluded that being fired from a job would provide an alternative reason why Phillips left Wisconsin or left his field of work.

Phillips says that evidence of his termination isn't relevant because he isn't seeking economic damages. But defendants aren't offering the evidence for the purpose of rebutting evidence of economic harm. Rather, they are rebutting Phillips's own deposition testimony about his noneconomic harm. In response to defense counsel's request to explain how defendants' conduct affected him, Phillips testified as follows:

> I kind of lost that passion I had for my craft, you know. It was always fun to go out there and do what you love to do and to see it afterwards. And what I've noticed after the incident between Gallagher and I, I'm slowly but surely losing that passion. I don't —yeah, it—yeah. That will not only just affect my work, but that will affect me for the rest of my life, just an FYI.

Dkt. 89 (Phillips Dep. 136:8–16). He later elaborated:

> I've lost my passion. The passion just isn't there anymore. I don't want to do it. I don't want to be in Wisconsin. I don't want my children to be in Wisconsin. Actually, I'm not going to be in Wisconsin. I'm not going to raise my children in Wisconsin. That's the impact that that had on my life, that I am relocating

4

> my family up out of here because, once again, we don't belong here. I'm not wanted here, so I'm leaving. That's how it – that's just how much it impacted my life. I'm starting to believe him, and I think you too.

*Id.* at 137:20–138:6. If Phillips offers similar testimony at trial, defendants are entitled to offer evidence suggesting other reasons that he stopped enjoying his work, changed his line of work, and left the state.

Phillips now argues that even the fact of termination lacks probative value because he had two other jobs in Wisconsin after he left Precision, so it is simply implausible that circumstances surrounding his departure from Precision contributed to decisions more than a year later. That is a fair point, but Phillips's testimony is that an incident even further in the past is what prompted him to change both his occupation and his residence. Phillips doesn't explain why he should be permitted to seek damages for decisions he made years after defendants' relevant conduct, but defendants should be barred from presenting evidence of other events that may have contributed to those decisions.

So if Phillips testifies consistently with his deposition that defendants' conduct caused him to choose a different line of work and move to another state, the court won't prohibit defendants from offering evidence that Phillips was terminated by Precision. The question remains whether defendants have admissible evidence to show this. The court addresses that issue next.

**B. Availability of witness Jeff Hariu**

Jeff Hariu was Phillips's boss at Precision. Defendants wish to present testimony or other statements from Hariu about Phillips's alleged termination from Precision. But defendants say that Hariu has been evading service of their trial subpoena, so they ask the court to declare him an unavailable witness under Federal Rule of Evidence 804(a)(5) and

5

permit them to present other statements in lieu of live testimony under Rule 807. Specifically, defendants wish to present the recording of what defendants say is a telephone call between Hariu and Phillips, along with a transcript of the call, in which Hariu says that he is terminating Phillips and explains his reasons why.

Rule 807 is the residual exception for the rule against hearsay. It doesn't include a requirement that the witness be unavailable, so the court need not determine whether defendants have satisfied Rule 804(a)(5). The residual exception is satisfied if:

> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
>
> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

In determining whether evidence is sufficiently trustworthy, the court of appeals considers several factors, including the following: the character of the witness for truthfulness and honesty; whether the testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury; the witness's relationship to the parties; the extent to which the witness's testimony reflects his personal knowledge; whether the witness ever recanted his testimony; and the existence of corroborating evidence. *United States v. Moore*, 824 F.3d 620, 622–23 (7th Cir. 2016).

Defendants made no attempt at the final pretrial conference or in their brief to demonstrate that the recording and transcript qualify under Rule 807, so the court won't admit that evidence. As already discussed, the only relevant information that Hariu can offer is that he terminated Phillips. It seems unlikely that a secretly recorded telephone conversation is the most probative, reasonably available evidence to establish that fact. If it is true that Precision

terminated Phillips, Precision should have business records showing that. In any event, defendants haven't identified any way they could present portions of the recording about Phillips being terminated without also introducing the prejudicial details about the reasons for the alleged termination that the court has excluded. The court will deny defendants' request to submit the recording and transcript into evidence.

**C. Connie Noble's letter to the ERD**

Phillips moved in limine to exclude evidence of Wisconsin Equal Rights Division's probable cause determination. Defendants conditionally objected, contending that they have "the right to introduce evidence related to the outcome of" the ERD proceedings if Phillips "raises or references the administrative complaints." Dkt. 153, at 3. The court granted Phillips's motion because "[t]he question whether any of the defendants discriminated against Phillips is reserved to the jury. Allowing defendants to introduce evidence of the ERD's determination would be confusing and unfairly prejudicial." Dkt. 157, at 7 (citing *Lewis v. City of Chicago Police Dept.*, 590 F.3d 427, 442 (7th Cir. 2009)).

The issue whether Phillips should be permitted to introduce other documents from the administrative proceedings wasn't raised by either side in the motions in limine, so the court asked Phillips during the pretrial conference whether he intended to introduce such documents. He identified a letter that Connie Noble had written to the ERD during the proceedings. Dkt. 101-6, Phillips says that the letter includes statements that contradict her deposition testimony, including that Gallagher apologized to Phillips and that Mega Concrete was conducting an internal investigation. In response to an objection by defendants, the court directed Phillips to redact any references to the administrative proceedings in the letter.

Phillips now contends that he should be allowed to present the letter unredacted. He says that it is important for the jury to know that Noble wrote the letter to the ERD because it "shows Mega Concrete's willful disregard of Plaintiff's civil rights, as it suggests that the company made misleading statements to a body that was charged with investigating and adjusting claimed civil rights violations." Dkt. 173, at 12. He similarly contends that it is relevant that Noble was writing to the ERD because it shows "knowledge, intent, and motive as well as Defendants' willful decision to cover up and/or downplay the incident." *Id.* at 13.

Defendants don't object to the admission of the letter, and they don't necessarily object to disclosing that the letter was addressed to the ERD. Rather, defendants say that they should be permitted to present evidence that the ERD made a "no probable cause" determination if Phillips is allowed to present other evidence about the administrative proceedings.

The court isn't persuaded that the letter or evidence about the administrative proceedings has significant probative value. But the court agrees with defendants that Phillips can't have it both ways. If he believes that it is important to introduce evidence about the ERD's investigation, then it will only be fair to allow defendants to submit evidence about how the administrative proceedings were resolved.

Phillips's request for reconsideration will be granted in part. If he offers a redacted letter and doesn't otherwise refer to the ERD proceedings, the court won't allow defendants to present evidence about those proceedings. But if he chooses to present the unredacted letter, then the court will allow defendants to elicit testimony on how the ERD resolved the complaint. In that case, Phillips may propose a jury instruction explaining the limited legal significance of the ERD's determination.

**D. Harassment instruction**

Defendants objected to the current draft of the harassment instruction, and they focus on the first element, which states:

> **Gallagher subjected Phillips to conduct that was sufficiently severe or pervasive that a reasonable person in Phillips's circumstances would find his work environment to be hostile or abusive.** To decide whether a reasonable person would find Phillips's work environment hostile or abusive, you must look at all the circumstances and the social context in which the conduct occurred. The circumstances may include the frequency of the conduct; its severity; its duration; whether it was physically threatening or humiliating, and whether it unreasonably interfered with Phillips's work performance. No single factor is required in order to find a work environment hostile or abusive. But only conduct amounting to a material change in the terms and conditions of employment amounts to an abusive or hostile environment.

Dkt. 168-3, at 5.

Defendants would rewrite the instruction as follows:

> **Gallagher intentionally subjected Phillips to conduct that was sufficiently severe or pervasive, so as to alter the conditions of Phillips' employment, which a reasonable person in Phillips's circumstances would find to be hostile or abusive, such that it would alter the conditions of employment.** To decide whether a reasonable person would find Phillips's work environment hostile or abusive, you must look at all the circumstances and the social context in which the conduct occurred. The circumstances may include the frequency of the conduct; its severity; its duration; whether it was physically threatening or humiliating, and whether it unreasonably interfered with Phillips's work performance. No single factor is required in order to find a work environment hostile or abusive. Conduct that amounts only to ordinary socializing in the workplace, such as sporadic or occasional use of abusive language does not constitute an abusive or hostile environment. You should consider all the circumstances and the social context in which the conduct occurred.

9

Defendants' proposed instruction includes three changes: (1) adding the word "intentionally" to the first sentence; (2) including the phrases "alter the conditions of Phillips' employment" and "alter the conditions of employment" in the first sentence; and (3) including the sentence, "Conduct that amounts only to ordinary socializing in the workplace, such as sporadic or occasional use of abusive language does not constitute an abusive or hostile environment." The court declines to adopt any of these proposals.

1. **Intentional conduct**

Defendants' only argument for adding the word "intentionally" to the instruction is that § 1981 applies to intentional discrimination only. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 386 (1982). But the word "intentional" in this context means only that the plaintiff must prove that the defendant acted the way he did because of the plaintiff's race. *See id.* at 391 ("[Section] 1981 can be violated only by intentional discrimination, [meaning that] liability under § 1981 [must rest on] the discriminatory motivation of the [defendants] themselves."). The draft of the instruction includes a separate element that "Gallagher subjected Phillips to the conduct because of Phillips's race." Dkt. 168-3, at 6. So the instruction already incorporates an element for intentional discrimination.

Defendants contend that "it is it is important for the jury to understand that intent to discriminate is absolutely required in order for them to impose liability." Dkt. 165, at 1. But the importance of an element isn't a reason to include it twice. The court's draft is consistent with the Seventh Circuit's pattern instruction, which doesn't include the words "intentional" or "intentionally." *See* Federal Civil Jury Instructions of the Seventh Circuit, Instruction 3.04 (2017 rev.). And defendants cite no authority for the view that the jury must be instructed on "intentional harassment" separately from intentional discrimination. This request is denied.

### 2. Alter the conditions of employment

Defendants do not explain why they propose to include two phrases that mean the same thing—"alter the conditions of Phillips' employment" and "alter the conditions of employment"— in one sentence. Regardless, the court's draft already includes the sentence, "But only conduct amounting to a material change in the terms and conditions of employment amounts to an abusive or hostile environment." That sentence comes directly from optional language in Comment d of the Seventh Circuit pattern instruction.

Defendants say that the language in the current draft is "almost . . . an afterthought or a factor to be considered." Dkt. 165, at 2. But that's inaccurate. The instruction states that the conduct must amount to a material change in the terms and conditions of employment. It is not simply one factor to be considered.

Defendants cite *Paschall v. Tube Processing Corp.*, which lists as an element that "the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation." 28 F.4th 805 (7th Cir. 2022). But that doesn't advance defendants' argument. Other § 1981 harassment cases frame the elements differently. For example, *Yancick v. Hanna Steel Corp.* identifies the relevant element simply as "the conduct must have been severe or pervasive." 653 F.3d 532, 544 (7th Cir. 2011). The important point is that the court has already included language addressing defendants' concern in the instruction. Defendants cite no authority requiring particular placement of that language in the instruction. This request is denied.

### 3. Occasional use of abusive language

The court omitted from its instruction the following language from Comment d of the Seventh Circuit pattern instruction: "Conduct that amounts only to ordinary socializing in the

11

workplace, such as occasional horseplay, sexual flirtation, sporadic or occasional use of abusive language, gender related jokes, and occasional teasing, does not constitute an abusive or hostile environment." Defendants ask that the reference to "sporadic or occasional use of abusive language" be added.

The court didn't include the language for multiple reasons. First, by its own terms, the language from Comment d is "optional." Second, it is unusual for an instruction to provide specific examples of things that do not meet an element. The instruction doesn't include a list of things that *do* meet the element, so including the language would make the instruction lopsided.

Third, in the context of this case, including the optional language could confuse the jury. The additional language doesn't define what "abusive language" means, which could lead the jury to conclude that the n-word can be grouped together with any other offensive word. But as explained at length in the order denying defendants' motion to dismiss, the court of appeals has *not* treated the n-word as just another slur, and the court has held that even occasional use of the word can create a hostile work environment, depending on the circumstances. *See* Dkt. 45, at 7–8 & n.2 (citing, *e.g.*, *Gates v. Bd. of Educ. of the City of Chicago*, 916 F.3d 631, 640–41 (7th Cir. 2019). The draft instructions list the circumstances that the jury must consider, so no additional language is required or helpful. This request is denied.

E.  **Harassment verdict question**

Defendants ask that the following question be included on the verdict form: "Did Defendant Robert Gallagher's conduct cause an interference with Plaintiff Michael Phillips' employment contract?" But this is really another objection to the jury instructions. Defendants

contend that interference with a contract is a "critical, dispositive" issue in this case because they believe it is a separate element of a § 1981 harassment claim. Dkt. 165, at 3.

The court already concluded in the order denying the motion to dismiss that contractual interference is:

> not a separate requirement. Under the cases that defendants themselves cite, severe or pervasive harassment is itself sufficient interference. *See Hancick*, 653 F.3d at 544; *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 647 (7th Cir. 2011); *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271 (7th Cir. 2004). Whether harassment "unreasonably interferes with an employee's work performance" is only one factor to consider. *Gates*, 916 F.3d at 940.

Dkt. 45, at 10. Defendants provide no reasoning or authority for departing from this position. In fact, one of the cases they cite in their trial brief states that "claims under Title VII and § 1981 are analyzed in the same manner," *Paschall*, 28 F.4th 805. And Title VII doesn't include a separate element for interference with a contract. So the court declines to add the element to either the jury instructions or the verdict form.

F.  **Testimony of Philip Dicken**

Philip Dicken was an employee of Mega Concrete, and he was present during the altercation between Gallagher and Phillips. Defendants want Dicken to testify about his observations; Phillips contends that any testimony Dicken would offer is either cumulative or barred by defendants' admission in their answer that "Gallagher and Plaintiff did not make physical contact with one another." Dkt. 84, ¶ 17.

Here is what Dicken said in his deposition. When counsel said to Dicken, "Please tell me everything that you observed with respect to that altercation" between Phillips and Gallagher, Dicken said:

13

> We get to the job site. I was the first one on site to deliver forms. There was lumber in the way. I could still get my boom truck in to get the forms off. Bob Gallagher showed up. He had asked them politely if they could move their lumber because we had concrete showing up in a pump truck. There was words exchanged. Bob got hit in the back of the head, and then that's when the N word come out and got them divided.

Dkt. 144 (Dicken Dep. 9:18–10:2). Through further questioning, Dicken provided the following additional details: "Michael the color guy" hit Gallagher in the back of the head with his fist; after Phillips hit him, Gallagher said, "Why did you hit me, nigger?" Phillips then said, "I will grab a two-by-four and hit you with that." *Id.* at 10:17–11:12.

The court expressed its skepticism in the final pretrial conference order that Dicken had any relevant testimony to provide. In his short deposition, his primary testimony was that Gallagher called Phillips the n-word because Phillips hit Gallagher in the back of the head with his fist. But that testimony is barred because by defendants' judicial admission, which is "binding," "conclusive," and "may not be controverted at trial." *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995). The court gave defendants an opportunity to identify relevant testimony that Dicken could offer that is consistent with both his deposition and defendants' judicial admission.

In their response, defendants say that Dicken can provide "critical evidence that goes to the heart of Plaintiff's racial harassment claim." Dkt. 172, at 2. But they don't identify any "critical evidence" other than testimony that would contradict their judicial admission. Defendants identify the following topics they believe that Dicken can testify about:

1) the number of times the n-word was used;

2) "the context in which the word was used";

3) the duration of the interaction between Phillips and Gallagher;

14

    4) the demeanor of the two men during the interaction;

    5) the situation which gave rise to the interaction between the two men;

    6) the overall setup of the DeForest subdivision development; and

    7) the lack of physical threats or aggressive movements by Gallagher.

*Id.* [1]

Topics 2) and 4) are too vague and too likely to lead to a contradiction of defendants' judicial admission. Defendants don't explain how they could ask Dicken about the "context" of Gallagher's use of the n-word or Gallagher and Phillips's "demeanor" without eliciting testimony about Phillips striking Gallagher. Topics 3) and 6) are mundane issues that aren't in dispute, so Dicken's testimony would add nothing to that of other witnesses. And Dicken didn't say anything about "the lack of physical threats or aggressive movements by Gallagher"; Dicken said only that "there [were] words exchanged." So there is no basis for Topic 7).

This leaves two topics: the number of times Gallagher used the n-word and "the situation which gave rise to the interaction between the two men." The latter topic presumably refers to Dicken's testimony that Gallagher "politely" asked Precision employees to move their lumber. Neither of these issues is irrelevant and both issues are in dispute, but they aren't "critical" pieces of evidence. Testimony about what occurred before Phillips arrived on the scene provides context, but it isn't directly related to Phillips's claims. The number of times Gallagher used the n-word does go to the severity of his conduct, but Dicken's testimony on

---

[1] These topics are different from those that defendants identified in an earlier brief. *See* Dkt. 165, at 10–11. Presumably, defendants modified their brief in response to the court's final pretrial conference order, which observed that defense counsel's suggestions at the conference for limiting Dicken's testimony were both inconsistent with Dicken's deposition and too vague to be helpful to the jury.

this point is unclear. He didn't say that Gallagher only used the word once, and counsel didn't ask him to clarify that point.

Dicken's proposed testimony on these two points also seems cumulative. Defendants will be calling Evan Schwandt, another Mega Concrete employee. In his deposition, Schwandt also said that Mega Concrete "politely" asked Precision employees to move their lumber and that he "thinks [he] heard [Gallagher] say [the n-word] once and that was it." Dkt. 164 (Schwandt Dep. 15:19–25, 17:11–16, 22:8–11).

The bottom line is that defendants haven't identified any testimony that Dicken can offer that isn't cumulative or barred by defendants' judicial admission. Moreover, defendants haven't identified a way to elicit whatever relevant testimony Dicken might offer in a way that wouldn't risk contradicting their admission. The court will exclude Dicken's testimony under Rule 403 as irrelevant, cumulative, and likely to confuse the jury and prejudice Phillips.

ORDER

IT IS ORDERED that:

1. Defendants' request to present evidence that "publicity from [this] lawsuit" has caused plaintiff's emotional distress is DENIED.

2. Defendants' request to present evidence about plaintiff's belief that Precision Carpentry and Classic Custom Homes interfered with his job at Precision is conditionally GRANTED in part. Defendants may elicit testimony from plaintiff on this issue *if* plaintiff testifies that he experienced less job satisfaction, chose a new career, or moved away from Wisconsin because of defendants' conduct. Defendants may not inquire into the reasons for plaintiff's belief or otherwise present evidence about plaintiff's dismissed claims in this case.

3. Defendants' request to reconsider the ruling barring defendants from evidence about the reasons for Phillips's alleged termination from Precision is DENIED.

4. Defendants' request to submit evidence under Federal Rule of Evidence 807, including the recording and transcript of a telephone call, is DENIED.

5. Plaintiff's request to reconsider ruling requiring him to redact Connie Noble's to the Wisconsin Equal Rights Division is GRANTED in part. If plaintiff chooses to submit an unredacted version of the letter, the court will allow defendants to present evidence about the resolution of the ERD proceedings.

6. Defendants' objections to the jury instructions and special verdict form are OVERRULED.

7. The testimony of Philip Dicken is EXCLUDED.

Entered April 5, 2022.

                                          BY THE COURT:

                                          /s/

                                          _____
                                          JAMES D. PETERSON
                                          District Judge